UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



FILED
APR 1 3 2017

| UNITED STATES OF AMERICA, | 3:16-CR-30150-RAL |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION |
| TRACY PETERS, | |
| Defendant. | |

Tracy Peters, a non-Indian, moved to suppress statements he made to tribal law enforcement officers, arguing that the officers failed to comply with Miranda v. Arizona, 384 U.S. 436 (1966) and violated the Fourth Amendment by detaining him. Magistrate Judge Mark A. Moreno issued a report and recommendation recommending denying Peters's motion, Doc. 39, and Peters has now filed objections to that recommendation, Doc. 40. For the reasons explained below, this Court adopts the report and recommendation and overrules Peters's objections.

I. Facts

At approximately 1:19 a.m. on November 3, 2016, Officer Daniel Rice and Sergeant Emmanuel Bear Killer of the Cheyenne River Sioux Tribe Police Department responded to a report that a male and female were fighting behind the Cheyenne River Motel. T. 6–7, 27, 49. Upon arriving, Officer Rice saw Peters and two women entering the motel through a side entrance. T. 7–9, 27. Officer Rice rolled down his window and asked them to stop, but one of

1

the females said they were okay and were going to bed. T. 8. The motel's side entrance was locked by the time Officer Rice exited his patrol car, so he and Sergeant Bear Killer entered the motel through the main entrance. T. 8–10. They were walking down a hallway when Officer Rice heard crying coming from room 117. T. 10–11, 27, 43. He knocked on room 117's door and Peters answered, opening the door far enough for Officer Rice to see that Peters was bleeding from a cut on his hand. T. 27, 43–44, 47, 51. The officers explained that they were responding to a fight call, to which Peters replied that someone had "jumped" him and June High Elk at a bar in downtown Eagle Butte, South Dakota. T. 13–14, 44. Officer Rice asked Peters whether he could enter the room to make sure everyone was okay. T. 12, 28, 44. Peters said that Officer Rice could come in, opened the door all the way, and stepped aside. T. 44.

Upon entering room 117, Officer Rice saw High Elk sitting in the bathroom with blood running down her face. T. 12, 28. There was blood all over the bathroom sink, floor, and stool. T. 12. Sergeant Bear Killer took High Elk outside the room to speak with her separately while Officer Rice stayed with Peters. T. 14. A short time later, Sergeant Bear Killer reentered the room and told Officer Rice that High Elk had confirmed Peters's story that they had been assaulted downtown. T. 14–15. Sergeant Bear Killer then took High Elk to the emergency room for her injuries. T. 14–15. Officer Rice followed behind in his patrol car, leaving Peters alone in room 117. T. 15–16.

At the emergency room, High Elk asked Officer Rice where Peters was. T. 16. When High Elk learned that Peters was back at the hotel, she divulged that Peters was the person who assaulted her. T. 16, 30. Hearing this, Officer Rice returned to the motel where he encountered Peters in the hallway leading to room 117. T. 17–18. Officer Rice inquired whether Peters was Indian and Peters said that he was not. T. 17–18, 30, 48. Officer Rice then told Peters that he

2

was being detained for assaulting High Elk, placed him in handcuffs, and escorted him to a patrol car. T. 17–18, 30. While walking to the patrol car, Peters volunteered that High Elk had assaulted him first and that he had only assaulted her in response. T. 19–21, 32, 35, 46–47. Peters continued to repeat variations of this statement throughout his detention by tribal police. T. 24–26; Ex. B I at 00:02–00:15, 01:00–01:25, 01:48–02:00, 02:15–02:45, 17:30–17:40, 1:45:15–1:25:00; Ex. B II at 06:20–07:10; 12:30–12:52.[1]

Concerned that he did not have jurisdiction over a non-Indian like Peters, Officer Rice radioed dispatch to send an Eagle Butte city police officer. T. 18–19, 41–42; Ex. B I at 00:27–00:55. The city police chief arrived approximately ten minutes later. T. 42. He informed Officer Rice that because the alleged crime involved a non-Indian offender and an Indian victim, the federal government, rather than the city police, had jurisdiction over Peters. T. 42, 49–50. At the city police chief's suggestion, someone called Larry LeBeau, the on-call detective for the Cheyenne River Sioux Tribe, to have Detective LeBeau contact an assistant United States attorney. T. 42, 49. Detective LeBeau obtained authority from an assistant United States attorney to conduct a probable cause arrest of Peters. See Doc. 1, Criminal Complaint Affidavit.

According to the dash cam video from Officer Rice's patrol car, Detective LeBeau arrived at the Cheyenne River Motel shortly after 3:30 a.m. Ex. B II at 04:40. Detective LeBeau informed Peters that he was being arrested on federal charges of domestic assault and assault resulting in serious bodily injury. Ex. B II at 06:20–07:10. Detective LeBeau explained that

---

[1]The dash cam in Officer Rice's patrol car recorded Peters's statements from the time he was placed in the patrol car until he was dropped off at the jail in Pierre, South Dakota. The government copied the dash cam recording onto two compact disks and introduced them as Exhibits B and C at the suppression hearing. Because of the length of Exhibit B, the elapsed time display on the compact disk starts over approximately one hour and forty-six minutes into the recording. To avoid confusion, this Court will cite to Ex. B I when citing to the first hour and forty-six minutes of Ex. B and Ex. B II when citing to the remaining portion.

3

Peters would be taken to the hospital to have his hand checked and then transported to Pierre where he would be held in federal custody. Ex. B II at 06:20–07:20.

A federal grand jury indicted Peters for assault with a dangerous weapon, assault resulting in serious bodily injury, assault resulting in substantial bodily injury to an intimate partner, and domestic assault by a habitual offender. Doc. 13. Peters moved to suppress his November 3, 2016 statements, arguing that the tribal police violated the Fourth Amendment by detaining a non-Indian like himself and violated Miranda by questioning him without first reading him his rights. Docs. 27, 28. The government opposed Peters's motion. Doc. 34. Judge Moreno held an evidentiary hearing at which he heard testimony from Officer Rice and received copies of Officer Rice's lapel and dash cam videos into evidence. Judge Moreno issued a report and recommendation recommending that Peters's motion to suppress be denied, Doc. 34, and Peters has now objected, Doc. 40.

## II. Analysis

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." "In the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Simeon, 115 F. Supp. 3d 981, 993 (N.D. Iowa 2015) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)).

The only specific objection Peters makes is that Judge Moreno should have found that the tribal police violated the Fourth Amendment by detaining him. Doc. 40. According to Peters, his status as a non-Indian made his detention unreasonable. Doc. 40. Although tribes generally

4

do not have criminal jurisdiction over non-Indians, Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 195, 212 (1978), tribal police have the authority to detain non-Indians who commit crimes within Indian country until they can be turned over to the appropriate state or federal authorities, Duro v. Reina, 495 U.S. 676, 697 (1990) ("Tribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities."); United States v. Terry, 400 F.3d 575, 579 (8th Cir. 2005) (explaining that tribal police have the authority "to detain non-Indians whose conduct disturbs the public order on their reservation"). A tribal police officer's detention of a non-Indian must be reasonable under Fourth Amendment standards. 25 U.S.C. § 1302(2); Terry, 400 F.3d at 580; United States v. Becerra-Garcia, 397 F.3d 1167, 1171 (9th Cir. 2005).

The tribal police's detention of Peters was reasonable under the Fourth Amendment. Peters's presence outside the Cheyenne River Motel when tribal police arrived, his bleeding hand, the injuries on High Elk's face, and High Elk's statement that Peters had assaulted her gave Officer Rice probable cause to detain Peters. When Officer Rice learned that Peters was a non-Indian, he contacted the city police immediately after securing Peters in the back of his patrol car. T. 41. Once it became clear that the federal government had jurisdiction over Peters, Detective LeBeau contacted an assistant United States attorney and obtained authority to make a probable cause arrest of Peters. Not long thereafter, Officer Rice transported Peters to the hospital and then to Pierre where he was taken into federal custody. All told, the tribal police's detention of Peters—including the trip to the hospital and the transport to Pierre—lasted approximately five-and-a-half hours. See Exs. B, C. This was not an unreasonable amount of

time under the circumstances. See Terry, 400 F.3d at 580 (holding that it was not unreasonable for tribal police to detain a non-Indian defendant overnight when the state sheriff was eighty miles away on a rainy night and did not have any deputies available).

Peters argues that his statements should be suppressed under United States v. Keys, 390 F. Supp. 2d 875 (D.N.D. 2005), but that case is easily distinguished. In Keys, BIA officers detained the defendant at a tribal jail on a Saturday afternoon. Id. at 877–78. The officers tried but failed to determine the defendant's race that evening. Id. The officers took no action on Sunday and the defendant remained in tribal jail. Id. at 878. By Monday morning, however, the officers had determined that the defendant was not an Indian. Id. at 884. Rather than releasing the defendant or transporting him to the appropriate authorities, the officers told the defendant that he would be released after an interview that afternoon. Id. The defendant agreed to the interview and made incriminating statements. Id. at 878. The district court held that the BIA officers' failure to release the defendant before the Monday afternoon interview was unreasonable. Id. Unlike the BIA officers in Keys, the tribal police in this case did exactly what the Supreme Court said they could: detained a non-Indian offender so that they could transport him to the appropriate authorities. See Duro, 495 U.S. at 697; Terry, 400 F.3d at 579–80. Instead of extending Peters's detention so that they could interview him, the tribal police acted diligently to minimize the detention period and only spoke with Peters about the alleged assault when Peters initiated the discussion. T. 24–26; Exs. B, C. The holding in Keys does not apply here.

Peters's objections to the report and recommendation fail to mention Judge Moreno's conclusion that the tribal police did not violate Miranda. To the extent that Peters objects to this conclusion, his objection is overruled for the reasons explained in the report and

recommendation. See Doc. 39 at 8–12. Peters either made his statements spontaneously or in response to attempts by the officers to clarify what Peters had already volunteered. T. 24–26, 32, 35, 48; see United States v. Chips, 410 F.3d 438, 445 (8th Cir. 2005) (explaining that Miranda does not bar the admission of spontaneous statements and that an officer's request for clarification of such a statement usually does not constitute an interrogation). As Judge Moreno found, the tribal officers' questions were not designed to enhance Peters's guilt.

## II. Conclusion

For the reasons stated above, it is hereby

ORDERED that the Report and Recommendation, Doc. 39, is adopted in full. It is further

ORDERED that Peters's objections to the Report and Recommendation, Doc. 40, are overruled. Finally, it is

ORDERED that the Motion to Suppress, Doc. 27, is denied.

DATED this 13th day of April, 2017.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE